BREWSTER v MARTIN MARIETTA ALUMINUM SALES, INC

Docket Nos. 70493, 70494. Submitted December 17, 1984, at Detroit.—
Decided September 16, 1985. Leave to appeal applied for.

Joy Brewster, an employee of Harvey Aluminum, Inc., since 1957,
became an employee of Martin Marietta Aluminum Sales, Inc.,
when Martin Marietta acquired Harvey Aluminum in 1968.
Brewster, who had been hired as a secretary by Harvey Alumi-
num, eventually became an industrial sales representative for
Martin Marietta. In 1975, Brewster's employment was termi-
nated, ostensibly for unsatisfactory job performance and insub-
ordination. Brewster filed a complaint in Wayne Circuit Court
against Martin Marietta Aluminum Sales, Inc., alleging that
she was subjected to sex discrimination and age discrimination
in violation of the Michigan State Fair Employment Practices

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, New Trials §§ 212, 213.
  See the annotations in the ALR3d/4th Quick Index under topic
  New Trial.
[2] Am Jur 2d, Trials §§ 1111 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Verdict.
[3, 4] Am Jur 2d, Civil Rights §§ 154 et seq.
  Application of state law to sex discrimination in employment. 87
  ALR3d 93.
[5] Am Jur 2d, Judgments §§ 106 et seq.
[6-10, 14] Am Jur 2d, Master and Servant §§ 43 et seq.
  Validity and enforceability of provision that employer shall be
  liable for stipulated damages on breach of employment contract.
  40 ALR4th 285.
  Modern status of rule that employer may discharge employee for
  any reason. 12 ALR4th 544.
[11, 12] Am Jur 2d, Civil Rights §§ 4261 et seq.
  Liability of employer, supervisor or manager for intentionally or
  recklessly causing employee emotional distress. 86 ALR3d 454.
[13] Am Jur 2d, Contracts §§ 441 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Contracts § 6.
[15] Am Jur 2d, Appeal and Error §§ 964, 965.
  See the annotations in the ALR3d/4th Quick Index under topic
  New Trial.

Act (FEPA). Two years later, Brewster filed a second action against Martin Marietta Aluminum and Martin Marietta Aluminum Sales, Inc., in Wayne Circuit Court alleging as causes of action intentional infliction of emotional distress, breach of an implied contract of employment, and negligent breach of that implied contract. The two actions were consolidated for trial. The court, John R. Kirwan, J., granted defendants' motion for a directed verdict on the intentional infliction of emotional distress claim, and plaintiff withdrew her age discrimination claim. The court instructed the jury on theories of breach of an implied employment contract, negligent breach of the implied employment contract, and sex discrimination as a result of the wrongful termination. The jury found in favor of plaintiff on all theories of recovery and awarded her $740,000 for economic loss as a result of the breached employment contract, mental distress damages of $500,000 as a result of the negligent breach, and $30,000 for unequal pay damages because of sex discrimination. The defendants moved for a judgment notwithstanding the verdict or, in the alternative, a new trial on all counts. The court denied the motions as to the economic loss award but granted the motion for judgment notwithstanding the verdict as to the mental distress award, finding that such a claim is not supported by the law in Michigan. The $500,000 award for mental distress damages was set aside. Plaintiff filed a motion for a new trial on the negligence claim only, arguing that she was entitled to a new trial on defendants' alleged negligence because there was evidence to support negligence apart from the breach of the employment contract. The motion was denied on grounds of insufficiency of evidence. Defendants appealed from the order partially denying their motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Plaintiff cross-appealed from the order granting defendants judgment notwithstanding the verdict on the negligent breach verdict and denying plaintiff's motion with respect to the mental distress damages. Plaintiff also appealed from the denial of her motion for a new trial. The appeals have been consolidated. *Held:*

1. The jury's verdicts on the sex discrimination and breach of implied employment contract claims were not against the great weight of the evidence. The trial court did not abuse its discretion by denying defendants' motion for a new trial, and denial of defendants' motion for judgment notwithstanding the verdict on the sex discrimination claim was proper.

2. Denial of defendants' motion for a new trial on the breach of implied contract claim was not an abuse of discretion, the

jury's verdict not being against the great weight of the evidence.

3. The trial court did not abuse its discretion when it denied defendants' motion for a new trial or remittitur on the $740,-000 economic loss jury award. That verdict is affirmed.

4. The trial court erred in failing to instruct the jury that it could award damages for mental distress under plaintiff's discrimination claim. Redress for plaintiffs' emotional injuries was available under the FEPA and the Elliott-Larsen Civil Rights Act.

5. The trial court did not err in granting defendants a judgment notwithstanding the verdict on the negligent breach of implied contract claim. The court acted properly in vacating the jury's award on that claim and did not abuse its discretion in denying plaintiff's motion for a new trial on defendants' alleged tort liability grounded on negligence alone.

6. Remand is necessary for a partial new trial on emotional or mental distress damages only as they relate to the sex discrimination claim. Plaintiff is entitled to a hearing on this issue because, although the trial court was procedurally correct in denying the plaintiff's motion to reassign the $500,000 mental distress award to the sex discrimination verdict, the jury was not instructed on the mental distress damages that it could have awarded plaintiff as a result of the discriminatory discharge, and the jury did find that plaintiff was entitled to such damages for a claim which should not have gone to the jury.

7. The $740,000 jury verdict for economic loss and the setting aside of the $500,000 in mental distress damages for the negligent breach claim are affirmed, as is the court's denial of defendants' motion for a new trial on the sex discrimination and breach of implied contract claims. Also affirmed is the trial court's denial of plaintiff's motion for a new trial on defendants' liability in negligence. The case is remanded for a partial new trial on mental distress damages arising out of defendants' liability for sex discrimination.

Affirmed in part, reversed in part, and remanded.

1. MOTIONS AND ORDERS — NEW TRIAL.

The grant or denial of a motion for a new trial is a matter within the discretion of the trial court.

2. TRIAL — JURY — VERDICTS.

A court may not substitute its judgment for that of the finders of fact, and where there is competent evidence to support the finding of the jury, its verdict should not be set aside.

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — SEX DISCRIMINA-
      TION.

   There are two approaches in Michigan for establishing a prima
   facie case of sex discrimination: to make a prima facie showing
   of discrimination under the disparate treatment theory, a
   woman alleging disparate treatment must show that she was a
   member of the class entitled to protection under the now
   repealed Michigan State Fair Employment Practices Act or the
   Elliott-Larsen Civil Rights Act and that, for the same or similar
   conduct, she was treated differently than a man; to make a
   prima facie case under the intentional discrimination theory,
   the plaintiff must show that she is a member of the affected
   class, that she was discharged, and that the person discharging
   her was predisposed to discriminate against persons in the
   affected class and had actually acted on that disposition in
   discharging her (MCL 37.2101 et seq., 423.301 et seq. [repealed];
   MSA 3.548[101] et seq., 17.458[1] et seq. [repealed]).

4. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — SEX DISCRIMINA-
      TION.

   A plaintiff alleging that her employment was terminated due to
   sexual discrimination has the burden of proving that the defen-
   dant discharged her and that her sex was one of the motives or
   reasons which made a difference in the defendant's determina-
   tion of whether or not to discharge her; sex does not have to be
   the only reason, but it does have to be one of the reasons which
   made a difference in determining whether or not to discharge
   the plaintiff.

5. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VER-
      DICT — EVIDENCE.

   The grant of a defendant's motion for a judgment notwithstand-
   ing the verdict is appropriate only if the evidence is insufficient
   as a matter of law to support a judgment for the plaintiff; in
   reaching a decision, the trial court must view the evidence in
   the light most favorable to the plaintiff and give the plaintiff
   the benefit of every reasonable inference that could be drawn
   from the evidence; if, after viewing the evidence in this man-
   ner, reasonable men could differ, the question is one for the
   jury and judgment notwithstanding the verdict is improper.

6. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — DISCHARGE
      FOR CAUSE.

   A provision of an employment contract providing that an em-
   ployee shall not be discharged except for cause is legally
   enforceable although the contract is not for a definite term, and

such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

7. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMS OF EMPLOYMENT — PERSONNEL POLICY.

Statements by an employer of its personnel policy and procedure can give rise to contractual rights in employees without evidence that the parties mutually agree that the policy statementś create contractual rights in the employee where the employer contemplates mutual adherence to the stated policies and thereby derives benefits from a cooperative and loyal work force.

8. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMS OF EMPLOYMENT — WRONGFUL DISCHARGE — QUESTION OF FACT.

A declaration by an employer that an employment relationship was terminated for unsatisfactory work is subject to judicial review where the employer promises to terminate employment for cause only; the jury should decide whether the employee was, in fact, discharged for unsatisfactory work, because the promise to terminate employment for cause only would be illusory if the employer is permitted to be the sole judge and final arbiter of the propriety of the discharge and there must be some review of the employer's decision if the "cause" employment contract is to be distinguished from the "satisfaction" contract.

9. MASTER AND SERVANT — WRONGFUL DISCHARGE — DAMAGES — MITIGATION OF DAMAGES.

A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a like nature; the criteria for determining like nature include the type of work, the hours of labor, the wages, tenure, working conditions, etc., and the question of whether or not an employee was reasonable in not seeking or accepting particular employment is a question for the trier of fact.

10. MASTER AND SERVANT — WRONGFUL DISCHARGE — DAMAGES.

An offer by an employer to take an employee back in a position inferior to that from which he was wrongfully discharged cannot be used to minimize the damages, and if anything has occurred to render further association between the parties offensive or degrading to the employee, an offer of further employment by the employer will not diminish the employee's recovery if the offer is not accepted.

11. CIVIL RIGHTS — REMEDIES.

A person aggrieved by the violation of a civil rights statute is entitled to pursue a remedy which will effectively reimburse him for or relieve him from violation of the statute, notwithstanding the statute did not expressly give him such right or remedy.

12. CIVIL RIGHTS — REMEDIES.

A victim of discrimination may bring a civil suit to recover damages for any humiliation, embarrassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination.

13. CONTRACTS — BREACH OF CONTRACT — TORTS — BREACH OF DUTY — ACTIONS.

A breach of contract, in some instances, may give rise to an independent action arising in tort when there is a breach of duty which is distinct from the breach of contract.

14. CONTRACTS — EMPLOYMENT CONTRACTS — BREACH OF CONTRACT — DAMAGES — MENTAL DISTRESS.

Mental distress damages are not recoverable for breach of an employment contract.

15. APPEAL — DAMAGES — NEW TRIAL.

The granting of a partial new trial limited to the issue of damages is disfavored, but an exception to this rule is allowed where liability is clear.

*Schaden & Heldman* (by *Victoria C. Heldman),* for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John Corbett O'Meara, George R. Ashford,* and *Francis R. Ortiz),* for defendants.

Before: V. J. BRENNAN, P.J., and CYNAR and C. W. SIMON,* JJ.

V. J. BRENNAN, P.J. In 1957, plaintiff, Joy Brewster, was hired by Harvey Aluminum, Inc., as a secretary in its Detroit office. In 1968, Martin Marietta Aluminum, Inc., acquired Harvey Alumi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

num, and by 1971, plaintiff had become an industrial sales representative for Martin Marietta. On September 30, 1975, plaintiff's employment was terminated for unsatisfactory job performance and insubordination.

Plaintiff began as a secretary for Martin Marietta, but after a time, she was actually functioning much of the time as an inside sales representative. In 1970, plaintiff was working outside sales, part-time, and in 1971 she officially became an outside sales representative. She testified that she received virtually no sales training, despite repeated requests, although other new sales representatives (mainly men) received eight weeks of training.

In May, 1971, Francis X. Bradley, vice-president of Martin-Marietta Aluminum, visited the Detroit office and spoke to the plaintiff, asking her if she was still expected to do secretarial work. When she replied that she was, Bradley said that that was not his intention and that she should be a full-time salesperson.

The plaintiff was a successful sales representative and was in the top 25 percent in sales in the company in 1972 and 1973. She received numerous accolades from her superiors and from her customers. In 1973, Jerry Henry was hired as Midwest General Sales Manager and plaintiff's supervisor. In 1974, plaintiff was made an Account Executive II and was given a raise of $3,900 a year. She was told the raise was to bring her in line with others in her classification. That year plaintiff had her best year, selling 7.5 million dollars' worth of aluminum. In late 1974 and 1975, plaintiff testified that aluminum became difficult to sell, particularly in the Detroit area with its numerous automotive accounts.

In February, 1975, plaintiff had a dinner meet-

ing with Jerry Henry in Detroit. Plaintiff testified that Henry told her that he thought that the company was moving too quickly in respect to women in sales and that women were not really appropriate in the sales field. When he returned to his office in Chicago, he called and apologized for his statement.

A regional sales meeting was held in Pheasant Run, near Chicago, on April 2, 1975. A blizzard caused a number of sales representatives to be delayed, including the plaintiff, who arrived at dinnertime. Plaintiff testified that Jerry Henry was upset about the delays and that he abruptly told her, in front of the other sales representatives, that she was "skating on thin ice" and not doing a good job. The next day, she stated that he called her "love" several times.

On April 23, 1975, Henry called the plaintiff to Chicago and gave her a memorandum stating that her performance was creating concern, that she had made contacts out of the line of authority, that she had been insubordinate at the dinner meeting, and that she had a poor attitude toward working with the company's Aluminum Express System and with an inside sales representative at the Lewisport, Kentucky, mill. The memorandum stated that plaintiff was to be put on probation for 30 days.

Plaintiff answered Henry's memorandum, expressing her concern with the abrupt and drastic nature of the criticism, promising to make every effort to comply with Henry's directives, and noting a planned trip to Lewisport to iron out any difficulties.

In early May, the plaintiff went to the Lewisport mill to meet with Mr. John Ullrich, plaintiff's Aluminum Express representative, and Harold

Long, Ullrich's supervisor. Following the meeting, the plaintiff received a note from Harold Long which intimated that the meeting had been a success and that any problems between plaintiff and Ullrich had been substantially solved.

On May 23, 1975, plaintiff met with Henry as scheduled. She testified that Henry told her that she was doing well and had improved in all areas, but that he had to find additional things to "protect his files". He then gave her a memorandum in which it was stated that she had improved in some areas, but a number of other areas were of "continuing concern", including unspecified "insubordination". He also stated that he had taken Ullrich off of her accounts in Lewisport and was substituting Thelma Cecil. The memorandum stated that another review would be done in 90 days.

Plaintiff testified that the market for aluminum in the summer of 1975 was very soft. Nevertheless, she received a congratulatory memorandum from Henry after selling a difficult account. Plaintiff testified that in July, Henry told her that she was doing a great job and was off of probation. In a subsequent meeting, she stated that he told her that William Sullenberger, the General Manager of Sales, would not let him take her off of probation, so another meeting would be required. In July, Thelma Cecil came to Detroit from Lewisport to make sales calls with the plaintiff. Plaintiff testified that the visit had gone well.

In August, 1975, plaintiff testified that she was second or third out of 22 or 23 sales representatives in a national sales contest. On August 20, plaintiff was again called to Chicago and Jerry Henry gave her a third negative memorandum regarding her performance. Plaintiff testified that at this meeting Henry also mentioned that the company had just hired two women in sales and

that he thought the company was moving too fast in respect to women in sales.

On September 23, 1975, plaintiff met with Robert McCallum, the company's Director of Industrial Relations, and was abruptly offered the option of resigning, being terminated, or taking an inside sales job at the mill in Torrance, California. Plaintiff considered the Torrance job a demotion and refused it. Her employment was terminated on September 30, 1975.

On April 23, 1976, Brewster filed a complaint in Wayne County Circuit Court against Martin Marietta Aluminum, Inc., alleging that she was subjected to sex discrimination and age discrimination in violation of Michigan statutes. Plaintiff amended her complaint on August 25, 1976, to name as a defendant Martin Marietta Aluminum Sales, Inc., a wholly owned subsidiary of Martin Marietta Aluminum, Inc. On September 28, 1978, plaintiff commenced a second action against Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Sales, Inc., (jointly and severally) alleging as causes of action intentional infliction of emotional distress, breach of an implied contract of employment and negligent breach of that implied contract. On October 29, 1979, the cases were consolidated for trial by stipulation and order of the Wayne County Circuit Court.

The matter was tried before a jury beginning on September 7 and continuing through October 1, 1982. Prior to submission of the case to the jury, the trial court granted defendants' motion for a directed verdict on the intentional infliction of emotional distress claim and plaintiff withdrew her age discrimination claim. (Plaintiff does not appeal from the directed verdict on the emotional distress tort claim.)

The jury was instructed on the theories of:

breach of an implied employment contract (damages for economic loss); negligent breach of the implied employment contract (damages for mental distress, suffering and humiliation), and sex discrimination as a result of the wrongful termination (damages for unequal pay). The jury found in favor of plaintiff on all theories of recovery and awarded her $740,000 for economic loss as a result of the breached employment contract, mental distress damages of $500,000 as a result of the "negligent" breach, and $30,000 for unequal pay because of sex discrimination.

The defendants moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial on all counts. It appears from the record that in plaintiff's supplemental answer to defendants' motion for judgment notwithstanding the verdict, plaintiff set forth a "conditional motion to modify" the judgment in the event that the trial court ruled in favor of defendants on the "negligent" breach claim, whereby plaintiff requested that the court either reassign the mental distress damages to the sex discrimination claim or "correct" the legal theory of negligence to allow plaintiff her damages under the theory of pure negligence in "undertaking to investigate good cause for plaintiff's termination". It also appears from the record that plaintiff agreed with defendants that the $30,000 award for unequal pay should be set aside because calculations were apparently made from 1968 and there may have been statute of limitation problems relating to the years prior to 1973.

On March 11, 1983, the trial court denied defendants' motions on the economic loss award which related to the breach of an implied employment contract and evidence supporting the sex discrimination claim and granted defendants' motion for a

judgment notwithstanding the verdict on the mental distress award for plaintiff's "negligent" breach of contract claim. The court determined that such a claim was not supported by the law in Michigan. Also, the court set aside the $500,000 awarded in mental distress damages for the "negligent" breach verdict, and plaintiff's "conditional" motion for reassignment of the $500,000 verdict was denied.

On March 18, 1983, in a somewhat confusing motion for a new trial on the negligence claim only, plaintiff argued that she was entitled to a new trial on defendants' alleged negligence because there was evidence to support negligence apart from the breach of employment contract. The court disagreed and denied plaintiff's motion on grounds of insufficiency of the evidence.

Defendants appeal as of right from the March 11, 1983, order which partially denied defendants' motion for judgment notwithstanding the verdict (and new trial), and plaintiff cross-appeals as of right from the March 11, 1983, order which granted defendants judgment notwithstanding the verdict on the "negligent" breach verdict and denied plaintiff's motion to reassign the mental distress damages. Plaintiff also appeals from the denial of her motion for a new trial. The appeals were consolidated for our review by order of this Court dated May 30, 1984.

Defendants' first claim is that the jury's verdicts on the sex discrimination and breach of implied employment contract claims were against the great weight of the evidence and that the trial court abused its discretion by denying defendants' motion for a new trial. We disagree.

The grant or denial of a motion for a new trial is a matter within the discretion of the trial court. *Wigginton v City of Lansing*, 129 Mich App 53; 341

NW2d 238 (1983), *lv den* 419 Mich 880 (1984). Where there is competent evidence to support a jury's verdict, it should not be set aside. *Bell v Merritt,* 118 Mich App 414; 325 NW2d 443 (1982), *lv den* 417 Mich 954 (1983). GCR 1963, 527.1(5), now MCR 2.611(A)(e), provides for a new trial if the verdict is against the great weight of the evidence. This rule, however, "does not give the trial court unlimited power to grant a new trial merely because it does not agree with the verdict. The court may not substitute its judgment for that of the finders of fact." *Bell,* p 422 (citation omitted). Where there is competent evidence to support the jury's verdict, it should not be set aside. *Id.*

We initially note that, at the time of plaintiff's discharge in 1975, the former Michigan State Fair Employment Practices Act (FEPA), MCL 423.301 *et seq.;* MSA 17.458[1] *et seq.,* was in effect. That act was repealed by 1976 PA 453 (effective March 31, 1977), which is now known as the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* Under FEPA, MCL 423.303a; MSA 17.458(3a) it was an unfair labor practice:

"(a) For any employer, because * * * of the sex of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment."

The Elliott-Larsen act was in effect at the time of defendant's trial. We have examined case law arising under both FEPA and the Elliott-Larsen act to assist us in analyzing the defendants' claims of error. In the instant case, the jury was instructed on the disparate treatment theory of sex discrimination.

At the time of trial, the law in Michigan required the following proof to establish a prima

facie case of disparate treatment discrimination. The plaintiff had to show that she was a member of a class entitled to protection under the FEPA (now under the Elliott-Larsen Civil Rights Act), and that she was treated differently for the same or similar conduct from those who were not members of the protected class. See *Heath v Alma Plastics Co*, 121 Mich App 137; 328 NW2d 598 (1982) (difference in salary under the Elliott-Larsen act). See also *Civil Rights Comm v Chrysler Corp*, 80 Mich App 368, 373; 263 NW2d 376 (1977) (wrongful discharge based on race discrimination under the FEPA).

Our Court also provided for an alternative method of establishing a prima facie case under the disparate treatment theory, labeling it as "intentional discrimination". To establish a prima facie case under this method, the plaintiff had to prove that she was discharged and that the individual (defendant) discharging her was predisposed to discriminate against females and had acted on the predisposition in discharging her. See *Civil Rights Comm, supra,* p 374 fn 3; *Schiapani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981). See also *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785; 369 NW2d 223 (1985). The current Standard Jury Instructions on Employment Discrimination, Disparate Treatment, approved by the Michigan Supreme Court for use by the courts in Michigan as of January, 1985, sets forth the following elements: Plaintiff had the burden of proving that the defendant discharged her and that her sex was one of the motives or reasons which made a difference in defendant's determination of whether or not to discharge her. See SJI2d 105.04. Thus, plaintiff had to prove that she was discriminated against because of her sex and that the discrimination was

intentional—that one of the motives or reasons for her discharge was that she was female. "Sex * * * does not have to be the only reason, but it does have to be one of the reasons which made a difference in determining whether or not to discharge the plaintiff." SJI2d 105.02.

First, our review of the record indicates that the trial court's instructions on the two methods for proving a prima facie case of sexual discrimination were proper and not contrary to the law at the time of trial. Furthermore, we point out that the instructions as they related to the allocation of proofs were based on burdens and order of proofs for establishing a prima facie case of discrimination (disparate treatment) as set forth by the United States Supreme Court in *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

Our Court explained the *McDonnell Douglas* proof allocations in *Clark v Uniroyal Corp,* 119 Mich App 820, 824-826; 327 NW2d 372 (1982). See also *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 252-253; 101 S Ct 1089; 67 L Ed 2d 207 (1981), reaffirming the *McDonnell Douglas* holding.

The new SJI2d instruction on the burden of proof in discrimination cases does not rely upon the *McDonnell Douglas* case. An instruction based on *McDonnell Douglas,* however, may be appropriate in a proper case. See *Bogue v Teledyne Continental Motors,* 136 Mich App 374; 356 NW2d 25 (1984) (handicap discrimination). We find that the instructions given in the instant case were not improper in relation to the *McDonnell Douglas* proof allocations and were appropriate. Thus, defendant's argument concerning the instruction is without merit.

Second, we do not find any inconsistencies in the

law on discrimination at the time of trial and standards of establishing a prima facie case under the new SJI2d instruction. Third, our review of the entire record shows that there was competent evidence to support a verdict against defendant on the sex discrimination claims for both unequal pay and wrongful discharge. Denial of defendants' motion for a new trial on this issue was not an abuse of discretion. Defendants also argue that the trial court should have granted defendants' motion for judgment notwithstanding the verdict on the discrimination claim. We disagree. The evidence was not insufficient as a matter of law to support a judgment for the plaintiff.

"A judgment notwithstanding the verdict on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for plaintiff. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 695; 310 NW2d 26 (1981). In reaching a decision, the trial court must view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence. *Isom v Farrugia,* 63 Mich App 351, 354-355; 234 NW2d 520 (1975). If after viewing the evidence in this manner reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. *Id."* *Drummey v Henry,* 115 Mich App 107, 110-111; 320 NW2d 309 (1982), *lv den* 417 Mich 895 (1983).

A judgment notwithstanding the verdict "may be allowed only if there is insufficient evidence, as a matter of law, to make an issue for the jury". *Killen v Benton,* 1 Mich App 294, 298; 136 NW2d 29 (1965). In our opinion, there was more than sufficient evidence presented to create a jury question on the issue of whether plaintiff's discharge was motivated by the fact that she was female. Denial of defendants' motion was proper.

Our review of the evidence also supports the denial of defendants' motion for a new trial brought in the belief that the jury's verdict on the breach of implied contract claim was against the great weight of the evidence. Plaintiff herein sued defendants for the breach of an implied contract of employment claiming that she was told by management personnel that as long as she did the job, she would have the job. Plaintiff's theory was that defendants could not terminate her employment without *just* cause and that her employment relationship with defendants was not terminable at the will of defendants.

In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980), the Court held that:

"1) a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not for a definite term—the term is 'indefinite', and

"2) such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." 408 Mich 598.

The *Toussaint* Court explained: "[A]n employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." 408 Mich 610.

Furthermore, the Court stated:

"We see no reason why an employment contract which does not have a definite term—the term is 'indefinite'—cannot legally provide job security. When a prospective employee inquires about job security and the employer agrees that the employee shall be employed

as long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will without assigning cause and may discharge only for cause (good or just cause). The result is that the employee, if discharged without good or just cause, may maintain an action for wrongful discharge.

"Suppose the contracts here were written, not oral, and had provided in so many words that the employment was to continue for the life of the employee who could not be discharged except for cause (including as a cause, if you will, his attaining the company's mandatory retirement age). To construe such an agreement as terminable at the will of the employer would be tantamount to saying, as did the Court of Appeals in *Toussaint,* that a contract of indefinite duration 'cannot be made other than terminable at will by a provision that states that an employee will not be discharged except for cause' (emphasis supplied) and that only in exceptional circumstances, where there are 'distinguishing features or provisions or a consideration in addition to the services to be rendered', would an employee be permitted to bargain for a legally enforceable agreement providing job security." 408 Mich 610-611 (footnote omitted).

We believe that there was competent evidence presented to show that there was an implied contract on defendants' part not to terminate or discharge plaintiff without just cause and that defendants' conduct through supervisory and management agents of placing plaintiff on probation for alleged problems with her work performance was sufficient to establish a policy of termination, on the facts presented in this case, only for just cause. In fact, the September 29, 1975, certified letter sent to plaintiff from Robert W. McCullum, Director of Industrial Relations, stated that "confirming Mr. Jerry Henry's discussion with you in Detroit on September 23, 1975, your employment is terminated due to unsatisfactory job performance and insubordination". McCullum's trial tes-

timony revealed that defendants' company manuals contained no definition of insubordination or probation and to his knowledge no employee had ever been placed on probation or terminated for insubordination. Under cross-examination, plaintiff's immediate supervisor, Jerry Henry, testified that plaintiff was not fired because she was not a good salesperson. Thus, it appears to us that the probationary period in which plaintiff was given an opportunity to change or correct her job performance and alleged insubordination and the wording of his letter, among other things such as the memoranda to plaintiff of the excellent work she had done prior to the period of probation, shows that defendants had established a policy pertaining to her by conduct and words to terminate only for just cause upon which she could rely. It also appears from the record that one of the major reasons for plaintiff's termination was the fact that she was a woman and that the jury could easily have inferred from the evidence that plaintiff's employment was not terminated for just cause or any of the reasons relied upon by defendants.

"Even under a broad reading, * * * *Toussaint* requires that an employee seeking to establish an implied contract must have, at least, entertained a belief that the personnel policies would be applied consistently. *Toussaint, supra,* p 613." *Longley v Blue Cross & Blue Shield of Michigan,* 136 Mich App 336, 341; 356 NW2d 20 (1984).

As explained in *Toussaint, supra:*

"While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly,

cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation 'instinct with an obligation'." (Footnotes omitted.) 408 Mich 613.

We also point out that the *Toussaint* Court agreed:

"[T]hat where an employer has agreed to discharge an employee for cause only, its declaration that the employee was discharged for unsatisfactory work is subject to judicial review. The jury as trier of fact decides whether the employee was, in fact, discharged for unsatisfactory work. * * * There must be some review of the employer's decision if the cause contract is to be distinguished from the satisfaction contract.

"The role of the jury will differ with each case. Where the employer claims that the employee was discharged for specific misconduct—intoxication, dishonesty, insubordination—and the employee claims that he did not commit the misconduct alleged, the question is one of fact for the jury: did the employee do what the employer said he did?" 408 Mich 621 (Footnotes omitted.)

The jury's verdict on the breach of implied contract verdict was not against the great weight of the evidence. Therefore, denial of defendants' motion for a new trial on this claim was not an abuse of discretion.

Defendants' third argument is that the jury's verdict was excessive.

The jury awarded the plaintiff $1,270,000, of which $30,000 was for unequal pay from 1968 through 1973, $500,000 was for the negligent breach causing mental distress, and $740,000 for economic loss from the breach of the implied contract. The court granted judgment notwithstanding the verdict on the plaintiff's negligent breach of contract claim and thereby disallowed the mental distress damages, leaving intact the economic loss award of $740,000. We will consider first the defendants' position of excessiveness of the verdict as it related to the economic loss award of $740,000. A motion for new trial on the issue of excessive damages was governed at the time of trial by GCR 1963, 527.1(3) and (4), now MCR 2.611(A)(1)(c) and (d).

"(1) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues whenever their substantial rights are materially affected, for any of the following causes:

\* \* \*

"(3) Excessive or inadequate damages appearing to have been influenced by passion or prejudice;

"(4) A verdict which is clearly or grossly inadequate or excessive; \* \* \*."

Our review of the record reveals that there is no indication that the jury's verdict was influenced by passion or prejudice. The trial was not particularly sensational, and neither plaintiff's counsel's argument nor the presence of publicity concerning the amateurish Bendix takeover maneuvers resulted in any prejudice to the defendant.

With regard to subsection (4) in the former court rule, 3 Honigman & Hawkins, Michigan Court

Rules Annotated (2d ed), pp 111-112, comment states:

"While both clauses (3) and (4) are concerned with inadequate or excessive damages, it presumably takes a more shocking disparity between what the jury awarded and what the court thinks permissible to justify a new trial under clause (4), when there has been no showing of passion or prejudice.

\* \* \*

"In this matter of damages, much must be left to the discretion of the trial judge. 'The presumption will be indulged that if the damages were excessive, relief would have been granted by the lower court.' *Aho v Conda,* 1956, 347 Mich 450, 455; 79 NW2d 917, 920."

It has often been stated that a court will not overrule a jury's verdict unless it is so excessive as to "shock the judicial conscience". *Watrous v Conor,* 266 Mich 397, 401-402; 254 NW 143 (1934); *Pippen v Denison Division of Abex Corp,* 66 Mich App 664; 239 NW2d 704 (1976), *lv den* 399 Mich 823 (1977). Thus, "jury verdicts [are] set aside by appellate courts as excessive only in rare instances". *Cryderman v Soo Line R Co,* 78 Mich App 465, 473; 260 NW2d 135 (1977), *lv den* 402 Mich 867 (1978).

This Court has granted remittitur in cases in which a jury's award was far in excess of the damages sought. *Tomei v Bloom Associates, Inc,* 75 Mich App 661, 668-669; 255 NW2d 727 (1977); *Gillispie v Bd of Tenant Affairs of the Detroit Housing Comm,* 122 Mich App 699; 332 NW2d 474 (1983), *lv den* 417 Mich 1100.37 (1983).

In the instant case, the plaintiff asked damages of one million dollars for each count. She presented a rationale for lost wages from the date of the termination of her employment to her retirement age, plus benefits, which totalled $1.3 mil-

lion. The jury's award of $740,000 for economic loss was a little over half of that. The plaintiff's chart included a 10% a year raise, which the jury may have believed was excessive.

Defendants argue that the plaintiff had a duty to mitigate her damages. In *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 181; 309 NW2d 194 (1981), this Court stated:

"It is well established that a plaintiff must make every reasonable effort to mitigate damages. * * * Such a defense, however, is an affirmative one, and proof of plaintiff's failure to mitigate rests upon the defendant. * * * A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a 'like nature.' * * * The criteria for determining 'like nature' include the type of work, the hours of labor, the wages, tenure, working conditions, etc. Whether or not an employee is reasonable in not seeking or accepting particular employment is a question for the trier of fact." (Citations omitted.)

The defendants contend that the plaintiff should have accepted the offered "inside" sales job in Torrance, California. According to 22 Am Jur 2d, Damages, § 72, pp 107-108:

"An offer by the employer to take the employee back in a position inferior to that from which he was wrongfully discharged cannot be used to minimize the damages. It has also been held that if anything has occurred to render further association between the parties offensive or degrading to the employee, an offer of further employment by the employer will not diminish the employee's recovery if the offer is not accepted." (Footnotes omitted.)

It was left to the jury to decide whether the inside sales job was a demotion, as plaintiff contended, there being testimony on both sides of this

issue. Further, it has been held elsewhere that a plaintiff is not required to accept even a similar job in a different state in mitigation of damages. *Id.*, 106-107. Defendants further argue that plaintiff had an opportunity to work for John Lynch, which she did not pursue. Mr. Lynch's testimony was that he tried to get the plaintiff interested in some sort of business relationship, but that she was depressed and he could not ignite her enthusiasm. If there was a concrete offer from Mr. Lynch, his terms were too vague to be offered by the defendants in mitigation of damages. As to plaintiff's other attempts to find employment, there was evidence that she was rejected at one aluminum company because her "references didn't check out". She testified that she applied to a number of companies, but was not successful.

From the evidence presented at trial, the jury could easily have concluded, considering the plaintiff's demoralized state following the termination of her employment, the stigma of the termination, the fact that, in the world of industrial metal sales, it was probably well known that she had filed a sex discrimination suit against her former employers and, finally, the depressed job market in southeastern Michigan in the late 1970's and 1980's, that the plaintiff was unable to secure employment of "like nature".

The judge below did not abuse his discretion when he denied a new trial or remittitur on the $740,000 economic loss jury award.

We have reviewed the remaining claims of error raised by defendants and find them to be without merit. We hereby affirm the jury verdict of $740,-000 for economic loss against the defendants.

Plaintiff argues on cross-appeal that the trial court erred in failing to instruct the jury that it could award damages for mental distress under

plaintiff's discrimination claim. Plaintiff claims that under the Michigan State Fair Employment Practices Act (FEPA), MCL 423.301 *et seq.;* MSA 17.458[1] *et seq.,* replaced by the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* damages for mental distress may be awarded.

In *Boscaglia v Michigan Bell Telephone Co* and *Pacheco v Clifton,* 420 Mich 308; 362 NW2d 642 (1984), the principal issue facing the Court was whether the exclusive remedy of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131), barred an action seeking recovery for physical, mental, or emotional injury resulting from an employer's violation of the FEPA or the Elliott-Larsen Civil Rights Act. Although holding that such actions were not barred, the Court did not offer an opinion on the question of whether physical, mental and emotional injuries were compensable under these acts because the question was neither briefed nor argued. The Court did state, however:

"We think it self-evident, however, assuming the Legislature in enacting the civil rights acts intended to provide compensation for physical, mental or emotional injury resulting from discrimination, that it did not intend that objective would be defeated by the bar of the exclusive remedy provision of the workers' compensation act. Whatever may have been the intention of the Legislature in enacting the exclusive remedy provision of the workers' compensation act, if it intended in enacting civil rights legislation that workers discharged in violation of such legislation could recover for resulting physical, mental or emotional injury that intention would necessarily supersede or modify the scope of other legislation that otherwise would defeat the intent to permit such recovery." 420 Mich 316-317.

In *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971), the Court stated:

" 'In cases where there has been illegal discrimination the person aggrieved has clearly a civil right of action for damages, and this is true although the provision for the enforcement of a civil rights statute under which the complainant claims redress provides for a criminal prosecution only. This right accrues by virtue of the general rule that where a statute imposes upon any person a specific duty for the protection or benefit of others, neglect or refusal to perform the duty creates a liability for injury or detriment caused by such neglect or refusal, if the injury or hurt is of the kind which the statute was intended to prevent.' " 385 Mich 556, quoting *Bolden v Grand Rapids Operating Corp*, 239 Mich 318, 328; 214 NW 241 (1927).

The defendants interpret this to mean that a jury is limited in its award of damages to those damages provided for in the statute, *i.e.*, those awardable by the Fair Employment Practices Commission (under the now repealed FEPA). Since the commission was not authorized to award damages for mental distress, the defendants argue that such damages are unavailable to the plaintiff here. Defendants also state that granting such damages pursuant to a statute which does not provide for them violates rules of statutory construction. But the *Pompey* Court dealt with this argument:

"The general rule, in which Michigan is aligned with a strong majority of jurisdictions, is that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive.

\* \* \*

"But courts have forged exceptions to these general rules when the statutory rights infringed were civil rights. Although there is some authority to the contrary most decisions have held that a person aggrieved by the violation of a civil rights statute is entitled to pursue a remedy which will effectively reimburse him for or

relieve him from violation of the statute, notwithstanding the statute did not expressly give him such right or remedy." 385 Mich 552-553. (Citations omitted.)

It is clear that the plaintiff was not limited in damages by the express terms of the FEPA.

In *Slayton v Michigan Host, Inc,* 122 Mich App 411, 416-417; 332 NW2d 498 (1983), a case brought under the Elliott-Larsen Civil Rights Act, the Court held:

"[A] victim of discrimination may bring a civil suit to recover for damages for any humiliation, embarassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination injury."

We believe that redress for plaintiff's emotional injuries was available under the FEPA as it is now available under the Elliott-Larsen Civil Rights Act.

Plaintiff's next claim is that the trial court erred by granting defendants a judgment notwithstanding the verdict on the negligent breach of implied contract claim.

At trial, the plaintiff claimed that defendants were negligent in giving her "mixed signals" regarding her performance, in terminating her employment, and in failing to exercise due care in investigating her coemployees' complaints.

We do recognize that in some instances a breach of a contract may give rise to an independent action arising in tort when there is a breach of duty which is distinct from the breach of contract. See *Hart v Ludwig,* 347 Mich 559, 565; 79 NW2d 895 (1956):

"Or, as Prosser puts it (Handbook of the Law of Torts [1st ed], § 33, p 205) 'if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not'."

Our review of plaintiff's complaint, proofs, and claims leads us to conclude that, because there was no breach of duty *distinct* from the breach of contract, plaintiff's cause of action arose from a breach of promise or the nonfeasance of a contractual obligation and her action is in contract, not in tort. A relationship did not exist in this case which would give rise to a legal duty without enforcement of the contract promise itself. See *Hart, supra,* p 565. See also Prosser and Keeton on Torts (5th ed), § 92, pp 660-662 ("[T]he affirmative act of discharging an employee is uniformly considered to be no more than non-performance of the agreement to continue employment.")

Although plaintiff claims on appeal that the proper term should be "negligent performance of the contract" rather than "negligent breach", the jury was instructed on a "negligent breach" theory. Plaintiff points to no cases recognizing a cause of action for "negligent breach of contract". The actions of defendants which plaintiff claims as evidence for her theory of "negligent breach" all involve activities leading to her discharge and the breach of the implied contract of employment. The trial court acted properly in vacating the jury's award on this count and did not abuse its discretion in denying plaintiff's motion for a new trial on defendants' alleged tort liability grounded on negligence alone. We also point out that mental distress damages are not recoverable for breach of an employment contract. *Valentine v General American Credit, Inc,* 420 Mich 256; 362 NW2d 628 (1984).

We find it necessary, however, to remand the instant case for partial new trial solely on emotional or mental distress damages only as they relate to the sex discrimination claim. The trial court stated during the hearing on defendants'

motion for a new trial that the plaintiff should have been allowed to have the jury instructed on mental distress damages as they related to the sex discrimination claim and, therefore, plaintiff was entitled to a hearing on this issue.

We agree. We also point out that the trial court was procedurally correct in denying plaintiff's motion to reassign the $500,000 mental distress award to the sex discrimination verdict because it would have been an invasion of the province of the jury to do so. It was not for the court to speculate on whether the jury would have awarded the *same* damages for emotional distress suffered because of sex discrimination as it awarded plaintiff for the "negligent breach" claim. Because the jury was not instructed on the mental distress damages that it could have awarded plaintiff as a result of the discriminatory discharge, and the jury did find that plaintiff was entitled to such damages for a claim which should not have gone to the jury, the remand is necessary here.

We do recognize that the Michigan Supreme Court disapproved of partial new trials limited to the issue of damages (*i.e.* in personal injury cases), but the Court does provide for an exception in situations where liability is "clear". See *Trapp v King,* 374 Mich 608; 132 NW2d 640 (1965). See also *Dooms v Stewart Bolling & Co,* 68 Mich App 5, 23; 241 NW2d 738 (1976), *lv den* 397 Mich 862 (1976). "A departure from the notion against granting partial new trials is justified where the circumstances of the case establish that justice will be fully and better served." We believe that the instant case presents a situation for a partial new trial on the issue of emotional distress damages *only* under the sexual discrimination claim because defendants' liability for sexual discrimination has been clearly established.

We hereby affirm the $740,000 jury verdict for economic loss and the setting aside of the $500,000 in mental distress damages for the negligent breach claim. We also affirm the court's denial of defendants' motion for a new trial on the sex discrimination and breach of implied contract claims.

We also affirm the trial court's denial of plaintiff's motion for a new trial on defendants' liability in negligence. However, we remand for a partial new trial on mental distress damages arising out defendants' liability for sex discrimination.