NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0047n.06

No. 11-1660

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jan 09, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OAK STREET FUNDING, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LYNN S. INGRAM, PAUL MURPHY, and 360 | ) | COURT FOR THE EASTERN |
| RISK MANAGEMENT, INC., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

Before:     **BATCHELDER, Chief Circuit Judge, KEITH, and MARTIN, Circuit Judges.**

**PER CURIAM.** Plaintiff-Appellant Oak Street Funding, LLC ("Oak Street") appeals from a district court order granting summary judgment and dismissing its claims of conversion and unjust enrichment against Lynn S. Ingram, Paul Murphy, and 360 Risk Management, Inc.

Ingram was a founding member of Ponta Castle Ingram Agency, Inc. ("PCI"), an insurance company. Oak Street loaned PCI money that was secured by PCI's business assets. Oak Street alleges that Ingram wrongfully obtained PCI customer accounts with the help of Murphy and 360 Risk Management.

The district court dismissed Oak Street's conversion and unjust enrichment claims because it found that they were based on the Employment and Non-Compete Agreements that were raised in Oak Street's original contract claims. Oak Street now appeals the judgment against it. Because

1

Oak Street was properly barred from bringing the conversion claims, and because Oak Street has no basis on which to bring the unjust enrichment claim, we **AFFIRM** the district court's judgment.

## FACTUAL BACKGROUND

This case involves a dispute regarding business relationships between the parties. Plaintiff-Appellant Oak Street Funding, LLC ("Oak Street") is a Delaware limited liability company. Oak Street is in the business of lending funds to insurance professionals. Defendant-Appellee Ponta Castle Ingram Agency, Inc. ("PCI") is a Michigan insurance agency. In July 2007 Appellant Oak Street loaned PCI $1,900,000. The loan was secured by all of PCI's assets.[1] PCI defaulted on the loan and surrendered all of its assets to Oak Street on February 11, 2009.

Defendant-Appellee Lynn Ingram is a former employee of PCI. Defendant-Appellee Paul Murphy was an independent contractor and (the record is unclear on this point) possibly one-time employee of PCI. On November 1, 2005—prior to the execution of the loan between PCI and Oak Street—Ingram entered into a Stock Purchase Agreement with PCI for $65,000, making him partial owner of PCI. Ingram also entered into an Employment Agreement and a Non-Compete Agreement with PCI the same day.

The Employment Agreement contains a clause regarding Ingram's compensation. It states:

Payments to Ingram. For the period from January 1, 2006 through December 31, 2007, PCI shall pay Ingram, on bi-weekly payroll, the annual wage of $250,000 per

---

[1] Oak Street's position is that the assets that were offered as collateral included any accounts originated by Ingram prior to the date of the Employment Agreement ("Accounts"), all other accounts, contract rights, rights to payment of money, agreements of any kind or nature, general intangibles and payment intangibles, and PCI's insurance "book of business" or "expirations" (collectively the "Collateral"). "Expirations" is a term used in the insurance field to refer to the account by account records of an insurance agency, which include such information as the name and address of the insured, a description of the property insured, the value of the policy, the amount of the premiums, and particularly the expiration date of the policy.

2

year, less such deductions as may be required by law or authorized by Ingram, plus automobile expenses for two vehicles (including auto insurance) (the expenses for such vehicles (but not insurance) not to exceed $25,669 per year); and PCI shall pay such other expenses incurred by Ingram in connection with his duties under this Agreement, including entertainment, travel and auto, and mobile phone, but such other expenses not to exceed $2,500 per month.

R. 1-4. at ¶ 3 (emphasis in original). The agreement also provided that PCI would pay for Ingram's life insurance, additional compensation, and provide him with certain fringe benefits.

The Employment Agreement includes two other relevant clauses. It contains an exclusivity clause, which states:

Exclusivity. Ingram agrees that he shall not conduct any property/casualty insurance business other than pursuant to the terms of this Agreement. All commissions on sales of property/casualty insurance during the term of his Agreement, as long as PCI shall not be in breach of this Agreement, shall be paid through PCI. Other than Ingram's accounts, as defined in Section 17, all accounts shall be deemed the property of PCI.

Id. at ¶ 12 (emphasis in original). In addition to agreeing to exclusivity with PCI, Ingram assigned his own insurance accounts to PCI. Section 17 of the Employment Agreement states:

Assignment of accounts. Ingram hereby assigns and transfers and conveys to PCI, effective on January 1, 2006, all of his right title and interest in and to Ingram's accounts. "Ingram's accounts", [sic] as used herein, means accounts originated by Ingram prior to the date of this Agreement.

Id. at ¶ 17 (emphasis in original).

The Non-Compete Agreement provides that:

During the term of the Employment Agreement and for a period of three (3) years after termination of the relationship with PCI, Employee shall not, directly or indirectly, on behalf of the Employee or any other person or entity, solicit the personal or commercial property or casualty insurance business of any customer of PCI.

R. 1-5, ¶ 4, at 2.

Things at PCI began to change in 2008. Appellee Ingram attests that by July 2008, it was clear that PCI was in financial turmoil. From August 2008 until October 2008—the date Ingram terminated his employment with PCI—Ingram attests that PCI failed to make many of the payments owed to him under the Employment Agreement. On October 8, 2008, Ingram's counsel sent a letter to PCI alleging breach of contract due to the failures to make payments under the Employment Agreement. Ingram claims that PCI did not respond to the letter or deny the breaches. On October 10, 2008, Ingram terminated his employment with PCI.

Shortly after he left PCI, Ingram began working for Defendant-Appellee 360 Risk Management, on October 24, 2008. The Articles of Incorporation for 360 Risk Management were filed in Michigan on July 29, 2008 by Defendant-Appellee Murphy. Oak Street claims that Ingram and Murphy were moving several accounts from PCI to 360 Risk Management as early as April 2008 with the help of other PCI employees. Oak Street further alleges that Ingram and Murphy were likely soliciting PCI clients before 2008 and that they used an offer of employment by 360 Risk Management to induce PCI employees to help them wrongfully transfer the business in violation of the contract with PCI. PCI, in default on its loan from Oak Street, surrendered its assets to Oak Street in July 2009.

## PROCEDURAL BACKGROUND

Oak Street filed its complaint on July 10, 2009, against Ingram, Murphy, and 360 Risk Management. The complaint alleged six counts: Count I for breach of contract against Ingram for violating the Employment and Non-Compete Agreements; Count II for conversion against Ingram, alleging conversion of Oak Street's collateral in the form of PCI accounts; Count III against Murphy and 360 Risk Management for aiding and abetting conversion of Oak Street's collateral in the form

4

of PCI accounts; Count IV for tortious interference with contract against Murphy and 360 Risk Management; Count V for unjust enrichment against Ingram, based on a claim of improper solicitation of PCI's clients; and Count VI for accounting. Oak Street maintains that it brought the complaint in two capacities, as subrogee of PCI and also as a secured creditor of PCI.

On August 10, 2010, in lieu of answering, Defendants filed a Motion for Summary Judgment on all counts. The district court held a hearing on Defendants' motion and eventually entered an order granting in part and denying in part Defendants' Motion for Summary Judgment.

With respect to the two contract-based claims—breach of contract (Count I) and tortious interference with contract (Count IV)—Appellees argued that Oak Street was barred from bringing the contract claims under the doctrine of first substantial breach (i.e. failing to pay Ingram the required payments under the Employment Agreement). Oak Street argued that Ingram breached his Employment and Non-Compete Agreements by soliciting PCI clients to join 360 Risk Management. Oak Street also argued that Murphy and 360 Risk Management tortiously interfered with a contract by inducing Ingram to violate his agreements.

The district court ultimately denied the motion as to Counts I, IV, and VI for breach of contract, tortious interference with contract, and accounting. First, however, the district court allowed Oak Street to conduct discovery on those counts. Specifically, the district court allowed discovery to determine whether Ingram actually solicited PCI customers to leave and join 360 Risk Management prior to the substantial breaches committed by PCI in September and October 2008.

The district court granted summary judgment as to Counts II, III, and V for conversion against Ingram; aiding and abetting conversion against Murphy and 360 Risk Management; and unjust enrichment against Ingram. The district court held that Oak Street was barred from bringing

5

the conversion claims because the tort claims were based on alleged violations of the Employment and Non-Compete Agreements; therefore, Oak Street was impermissibly restating its contract claims as tort claims.

The court also dismissed Oak Street's unjust enrichment claim, which was based on an implied contract theory of recovery. The court reasoned that there was no basis for the court to imply a contract since the claim was based on a violation of the Employment and Non-Compete Agreements, which were express contracts.

On August 24, 2010, Oak Street filed a motion for reconsideration with respect to the dismissal of Counts II, III, and V. On October 28, 2010, the district court issued an order denying Plaintiff's motion for reconsideration and the litigation continued as to the remaining counts.

On March 16, 2011, Defendants filed a motion for summary judgment as to Counts I, IV, and VI. The district court entered a stipulated order of dismissal on April 18, 2011. The parties stipulated to dismiss the contract and tortious interference counts—Counts I, IV, and VI—with prejudice, but reserved Plaintiff's right to appeal the district court orders with respect to Counts II, III, and V—the conversion and unjust enrichment counts.

Oak Street filed a timely Notice of Appeal. On appeal Oak Street argues that the district court improperly dismissed the conversion and unjust enrichment claims and improperly denied its motion for reconsideration. Accordingly, this opinion is limited to those issues.

### STANDARD OF REVIEW

We review a district court's grant of a motion for summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997). Summary judgment is proper if, after viewing the evidence

6

that way, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## DISCUSSION

### I. Conversion Claims

Oak Street's claims fail whether it brings them as a subrogee—stepping in the shoes of PCI—or as a secured creditor of PCI.

#### A. Oak Street as Subrogee of PCI

As a subrogee of PCI, Oak Street appeals the district court's decision barring it from bringing its conversion claims on the basis that Oak Street simply recast its contract claims as tort claims. Upon *de novo* review, we agree with the district court's judgment.

Michigan courts have taken care to "avoid confusing contract and tort law." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995). Michigan law provides that "an action in tort requires a breach of duty separate and distinct from a breach of contract." *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987) (citing *Hart v. Ludwig*, 79 N.W.2d 895, 898–99 (Mich. 1956)). In some cases a breach of contract may give rise to an independent tort action, but only where there is a breach of a duty that is distinct from the breach of contract. *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 378 N.W.2d 558, 569 (Mich. Ct. App. 1985) (citing *Hart*, 79 N.W.2d at 898). A claim that is based on a breach of a promise is an action in contract, not in tort. *Id.*; *see also Haas*, 812 F.2d at 1016.

7

"[T]he threshold inquiry is whether the plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997). "Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts." *Id.* (internal citation and quotation omitted). The duty, however, does not extend to "intangible economic losses." *Id.* (internal citation omitted).

Oak Street argues that the district court improperly characterized its conversion claims as arising out of PCI's Employment and Non-Compete Agreements with Ingram. Appellant's Br. at 17-22. The record, however, shows that the district court's determination was correct and that Oak Street simply recast its contract claims as tort claims. The only damages that Oak Street alleges flow from the alleged breaches of the Employment and Non-Compete Agreements. *Id.* at 18. Oak Street does not allege any separate duty that was breached by Ingram apart from his contractual obligations. *Id.* at 19.

The Complaint makes the following allegations regarding Ingram's duty and Oak Street's damages, as subrogee of PCI:

> 23. Currently, Defendants are deriving income from that part of PCI's book of business and Oak Street's collateral that they collectively solicited and removed from PCI by execution of the AOR Letters or otherwise.
>
> . . .

**Count I**
**Breach of Contract**

> 26. Pursuant to UCC Article 9, PCI's claims against Ingram are subrogated to Oak Street, and Oak Street is thereby permitted to assert PCI's claims against Ingram. MCL § 440.9607(1)(c).

8

27. As a proximate result of the breach of the Employment Agreement and Non-Compete Agreement by Ingram, Ingram and/or the 360 Agency is believed to be receiving commission income or some or all of PCI's book of business and thereby has impaired Oak Street's collateral.

28. As a proximate result of Ingram's actions, Oak Street, as subrogee of PCI, has been damaged.

. . .

## Count II
### Conversion (Ingram)

30. By the actions described above, Defendant Ingram unlawfully converted Oak Street's collateral to his own use.

Compl. at 5–6.

Here, Oak Street's failure to allege a violation of a legal duty that is separate and distinct from contractual obligations precludes it from bringing the conversion claims. Oak Street's theory is that PCI's client accounts were collateral, and by taking its customers, Appellees converted PCI's property. There is no allegation in the Complaint that Appellees had a fiduciary duty or any other duty to PCI. The only duty that is mentioned in the pleadings is related to the contracts.

Oak Street characterizes PCI's client accounts as "collateral." As the district court noted, there is no allegation that the clients had anything other than an at-will agreement with PCI for coverage. There is no allegation that the clients were unable to switch to another agency for any reason, or even for no reason at all. As Appellees argued in the district court proceedings, "Oak Street does not 'own' PCI insurance accounts, i.e. client relationships, in perpetuity. In the absence of a contractual agreement barring such conduct, free enterprise permits anyone to solicit and service PCI's clients." *Oak Street Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 579 (E.D. Mich. 2010)

9

(describing the arguments of the defense). Therefore, it is unclear how Appellees, let alone anyone, could be held liable for converting accounts that are not necessarily the property of Oak Street.

The district court did not err in finding that Oak Street attempted to recast its contract claims as tort claims. Accordingly, Oak Street's conversion claims are barred as a matter of law.

### B. Oak Street as a Secured Creditor

Alternatively, Oak Street claims that as a secured creditor, it should have been able to proceed with the conversion claims.

As the district court held, with respect to the secured creditor arguments, "[n]one of [the cases cited by Oak Street] involve Michigan law and none are claims in which the alleged 'converted' assets are terminable-at-will agreements with third parties." *Oak Street Funding*, 749 F. Supp. 2d at 579. Oak Street has not provided a basis on which it could bring such claims as a secured creditor. Accordingly, even as a secured creditor, Oak Street's conversion claims are barred.

## II. Unjust Enrichment Claim

Finally, Oak Street argues that the district court improperly dismissed its unjust enrichment claim. The dismissal was not improper.

A plaintiff must establish the following to sustain a claim of unjust enrichment: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003) (citing *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)). If the plaintiff can establish this, "the law will imply a contract . . . to prevent unjust enrichment." *Id.* (citing *Martin v. E. Lansing Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. Ct. App. 1992)).

10

Because Oak Street's conversion claims are based on the terms of the unenforceable agreements between PCI and Ingram, the district court was correct in barring the implication of a contract where an express contract covered the same subject matter. *See Belle Isle*, 666 N.W.2d at 280 ("[A] contract will be implied only if there is no express contract covering the same subject matter.").

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.