**Mary D. FRANKLIN, Plaintiff,**

v.

**ITT WEAVER, Defendant.**

No. 84–2755C(1).

United States District Court,
E.D. Missouri.

Dec. 30, 1985.

Joanne D. Martin, St. Louis, Mo., for plaintiff.

Donald J. Meyer, Clayton, Mo., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

Plaintiff Mary D. Franklin brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Plaintiff alleges that she was discharged from employment with defendant on account of her race and sex and was treated differently than similarly situated white and male employees.

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

### FINDINGS OF FACT

1. Plaintiff Mary D. Franklin is a black female resident of the State of Missouri and was at all times relevant herein a citizen of the United States.

2. Defendant ITT Weaver is a manufacturing company which in February and March of 1984 had its principal place of business at 2210 Howard Street, St. Louis, Missouri.

3. Plaintiff was employed by ITT Weaver from October 19, 1980 until October 22, 1982, when she was laid off due to lack of work. During this period, she worked primarily as a grinder of ground rod clamps. Plaintiff received favorable evaluations and was commended for her attendance record.

4. As a result of her layoff, plaintiff performed no work for defendant for over one year. Consequently, in accordance with the provisions of the labor agreement between defendant and the union, defendant terminated plaintiff on October 22, 1983.

5. On February 15, 1984, Franklin was rehired by ITT Weaver as a grinder and placed on the standard 30 day probation period for new employees provided for in the labor agreement between ITT Weaver and the union.

6. As a grinder of ground rod clamps, plaintiff's duties included using a grinder to remove excess metal from cast clamps. Between October, 1982 and February, 1984, the quota for grinders increased from 350 clamps per hour to 510 clamps per hour.

7. Franklin's lead person was Johnny Clerkley, a black male. His duties included instructing the grinders in their work and bringing pans filled with unground clamps to the grinders. Due to the manufacturing process, some clamps required more grinding and, consequently, more time to grind. Clerkley did not examine the clamps and did not supply Franklin with clamps requiring more grinding. On average, Franklin's clamps did not differ from the clamps provided to other grinders.

8. Franklin's immediate supervisor was Henry C. ("Hank") Price, a black man. Each day Price completed a "management document". On this form, Price recorded the daily performance of the employees he supervised. Daily performance was measured by the number of hours worked and the number of hours earned, a figure obtained by dividing the number of pieces ground by the hourly standard. Price compiled the daily figures to obtain a weekly average. Weekly figures were recorded in percentage terms. When the hours earned equalled the hours worked, the employee received a 100% weekly average. Price considered as adequate any employee who met 100% twice during the probationary period. During plaintiff's employment, she produced weekly averages of 96.1%, 92.9%, 91.7%, 98.2%, and 90.2%. Plaintiff did not achieve a weekly average of 100% or better during any week of her probationary period.

9. During the relevant period, Allen Clark, a white male, served as plant super-

intendent. As one of his duties, Clark evaluated the weekly performance of grinders. Periodically, Clark prepared a spreadsheet listing each grinder's weekly production. Price considered 100% production during one of the first three weeks of probation to be satisfactory performance. For her first four weeks, Franklin's production figures were 88%, 88%, 92%, and 119%. Since Clark used different data than Price, Clark's performance figures do not match those of Price. Due to a one week delay in obtaining data, Clark did not have the 119% figure before him when he agreed to terminate Franklin. On the basis of the performance figures Clark did consider, plaintiff did not satisfy Clark's evaluation standard for probationary employees.

10. As a standard practice, Price completed probationary reports for new employees. By checking the appropriate box on the form, Price could indicate that various aspects of performance were above average, average, or below average. Plaintiff's report indicates that she performed below average with regard to the quality and quantity of her work during each week of probation. During the week ending February 18, 1984, Price commented that "Franklin is working very hard, performance for this week is 92%." For the week ending February 25, 1984, Price commented that "Franklin's performance is below 100%." The following week Price commented "below 100%, told Mary Franklin performance must improve." No other weekly comments were made. On March 14, 1984, Price completed the probationary form and recommended dismissing Franklin. Clark concurred in this recommendation, adding his comments to the form: "Employee has not had performance over 100%, performance below standard, agree." Plaintiff was terminated on March 15, 1984.

11. Twenty-two grinders were employed in the department where Franklin worked during her probationary period. Fourteen were female, nine black. During plaintiff's probation, three white male grinders were also probationary employees. Each of these employees satisfied the above standards established by Price and Clark. During the relevant period, a white female grinder did not meet these standards and was terminated on the same day as plaintiff.

12. On March 9, 1984, Charles Wochner, the plant manager, authorized the hiring of six additional grinders due to an increase in production. The personnel department hired six additional grinders who began work on days between March 16 and March 23, 1984. None of these additional grinders filled the position left open by the termination of plaintiff. Plaintiff was replaced by Louise Washington, a black female.

13. Defendant's decision to terminate plaintiff was not based on race or sex and was not affected in any way by racial or sexual bias on the part of employees of ITT Weaver.

14. Plaintiff was not treated differently than other white or male grinders on account of plaintiff's race or sex.

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3). Defendant is an employer as defined in 42 U.S.C. § 2000e(b).

In a Title VII cause of action, plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If plaintiff is successful, defendant must then articulate a legitimate non-discriminatory reason for its actions. In order to sustain this burden, defendant need only present evidence which raises a genuine issue of fact as to whether it discriminated against plaintiff. The burden of producing evidence then shifts back to plaintiff, who must show by a preponderance of the evidence, that defendant's explanation was merely a pretext for discrimination within the meaning of the statute. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981);

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Tate v. Weyerhaeuser Co., 723 F.2d 598, 602 (8th Cir.1983); Washington v. Dayton Hudson Corp., 610 F.Supp. 1120 (E.D.Mo.1985). Once defendant responds to plaintiff's proof of offering evidence of the reason for its actions, the presumption "drops from the case" and the Court must then determine whether there was discrimination within the meaning of Title VII. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The ultimate " 'factual inquiry' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff'." Id. at 715, 103 S.Ct. at 1482 citing Texas Department of Community Affairs, 450 U.S. at 253, 101 S.Ct. at 1093. Plaintiff always retains the burden of persuasion with respect to this ultimate factual issue. The division of intermediate evidentiary burdens serves merely to allow the court to evaluate more easily the evidence as it bears on the critical issue of discrimination. Id.

 The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973). On all of plaintiff's claims herein she asserts disparate treatment as a basis for recovery. Disparate treatment occurs where "[t]he employer simply treats some people less favorably than others because of their race." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In the context of terminations, a prima facie case of disparate treatment requires plaintiff to show: 1) she was a member of a protected class; 2) she was capable of performing the job; and 3) she was discharged from the job.

Johnson v. Bunny Bread Company, 646 F.2d 1250, 1253 (8th Cir.1981).

 Plaintiff alleges that she was terminated on the basis of her race and sex. In the opinion of this Court, plaintiff fails to establish a prima facie case with respect to this claim. The evidence establishes that plaintiff was not performing her job adequately. See Findings of Fact Nos. 8, 9, and 10. It should be noted that plaintiff's supervisor told her that her performance was inadequate and gave her an opportunity to improve. See Findings of Fact No. 10.[1] Alternatively, assuming that plaintiff established a prima facie case, plaintiff failed to satisfy defendant's standards for production. Thus, defendant presents a legitimate non-discriminatory reason for plaintiff's discharge. See Findings of Fact Nos. 8, 9, and 10. Plaintiff did not establish that this explanation served as a pretext or that plaintiff's race played any part in defendant's decision to terminate her. See Findings of Fact Nos. 11 and 13. On the day of plaintiff's termination, a white female was terminated for failing to meet the same performance standards. See Findings of Fact No. 11. Furthermore, the grinder position left open by plaintiff's termination was filled by a black female. See Findings of Fact No. 12.

Plaintiff was well represented by her appointed counsel whose thorough preparation and trial presentation surpassed the work of many more experienced attorneys. This Court compliments her on her professional attitude in responding to the appointment of this Court. Nevertheless, the evidence established that plaintiff was unable to perform her duties adequately.

Accordingly, plaintiff's claim that she was discriminated against on the basis of her race and sex is dismissed and judgment is entered in favor of the defendant.

---

**1.** Plaintiff presented conflicting evidence as to whether she was given more "bad work", that is, clamps requiring more grinding, than other grinders were given. The Court does not credit her testimony. See Findings of Fact No. 7.