952 F.2d 942
 57 Fair Empl.Prac.Cas. (BNA) 1155,
57 Empl. Prac. Dec. P 41,190
Gary WILSON, Plaintiff-Appellant,
v.
STROH COMPANIES, INC., a Delaware corporation; Stroh's Ice
Cream Company, a division of the Stroh Brewery
Company, an Arizona corporation,
Defendants-Appellees.
 No. 91-1430.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 8, 1991.
Decided Jan. 6, 1992.
Rehearing and Rehearing En Banc
Denied Feb. 21, 1992.
 
 Marilyn A. Madorsky argued & briefed, Provizer, Eisenberg, Lichtenstein & Pearlman, Southfield, Mich., for plaintiff-appellant.
 David B. Calzone, Virginia F. Metz argued & briefed, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants-appellees.
 Before MERRITT, Chief Judge, GUY, Circuit Judge, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Plaintiff, Gary Wilson, appeals the district court's grant of summary judgment in favor of Defendants, Stroh Companies, Inc. and Stroh's Ice Cream Company (collectively "Stroh's"), in this Title VII employment discrimination case. For the following reasons, we affirm the district court's grant of summary judgment in favor of Stroh's.
 
 
 2
 * Stroh's employed Wilson, who is black, from January of 1978 until October 9, 1987. During September of 1987, Stroh's established new, staggered work schedules for employees, including Wilson, at its Detroit ice cream plant. It changed Wilson's former 6:00 A.M. to 2:00 P.M. shift to 11:00 A.M. to 7:00 P.M. The union complained that the later starting time interfered with union steward Wilson's ability to interact with union members. Wilson complied with the new schedule on September 29 and 30, 1987. Members of the union met with management on September 30, 1987, to discuss Wilson's request for an earlier starting time. Phillip Roselli, general manager of Stroh's ice cream division, Ronald Holloway, corporate industrial relations manager, and Dennis DeJaeghere, plant manager, represented management at the meeting. Wilson, Ray Richardson, and Ed Smith represented the union. The meeting ended without resolution of Wilson's request.
 
 
 3
 After the meeting, Wilson, Richardson, and Smith of the union, and Holloway of management continued the discussion. Wilson claims that Richardson told him to report for work at 6:00 A.M. on the following day, not as scheduled at 11:00 A.M. Wilson claims that he advised DeJaeghere of this arrangement. Later that evening, Wilson called James Rauen, a co-employee, to inform him that they would exchange work starting times for the next day.
 
 
 4
 DeJaeghere, the plant manager, made several attempts to contact Wilson by phone that evening, but Wilson refused to accept his calls.[1] Acting on instructions from industrial relations manager Holloway, DeJaeghere then attempted to send a Western Union telegram to Wilson, informing him that he should comply with the 11:00 A.M. starting time. Wilson refused to accept the telegram. Both Wilson and Rauen showed up for work at 6:00 A.M. the next day.
 
 
 5
 The events of September 30, 1987, became the subject of an October 7, 1987, meeting of management and the union. Wilson admitted that he called Rauen at home but denied that he attempted to reschedule Rauen. Wilson claimed that he merely advised Rauen's wife that he should expect a call from DeJaeghere, the plant manager, who would reschedule him. Roselli, the general manager, told Wilson that he should not attempt to reschedule employees. Holloway, the industrial relations manager, then conducted an independent investigation of the events on behalf of Stroh's. Holloway interviewed Rauen, who stated that he had listened, on another extension, to Wilson's phone conversation with Rauen's wife.[2] Rauen disputed Wilson's version of the call, asserting that Wilson instructed him to report at 11:00 A.M. on the following morning. Holloway concluded that Wilson had lied. On October 8, 1987, Stroh's suspended Wilson pending a final determination of discipline.
 
 
 6
 On the following day, Holloway learned that Wilson told fellow employees George Beecher and James Carter that, because they began their shifts early at DeJaeghere's request, they were entitled to work until the end of their normal shift, thereby picking up overtime. Wilson claims he was merely doing his job as union steward. Holloway, the industrial relations manager, decided that Wilson was again attempting to reschedule employees in a manner contrary to the policies and directives of Stroh's. He recommended Wilson's immediate termination. Concurring in Holloway's recommendation, Roselli, the general manager, discharged Wilson that day.
 
 
 7
 Wilson then filed a grievance protesting his discharge. At the conclusion of protracted proceedings, the arbitrator concluded that Wilson engaged in eight acts of insubordination, which justified his dismissal. The issue of alleged racial discrimination in Wilson's discharge was not, as such, before the arbitrator.
 
 
 8
 Wilson then filed this suit. He claims that his termination was the product of racial animus, in violation of section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. §§ 37.2101 et seq. Specifically, Wilson claims that his direct supervisor, DeJaeghere, displayed animosity toward him because he is black. He claims that DeJaeghere was out to get him and that this prejudice should be imputed to Holloway and Roselli. Wilson did not claim that either Holloway or Roselli was directly racially motivated.
 
 
 9
 The district court refused to impute DeJaeghere's prejudice[3] to Holloway, who is black, and Roselli. It concluded that, because DeJaeghere's prejudice could not be attributed to Holloway and Roselli, Wilson had failed to submit evidence to support a prima facie case of discrimination. Additionally, the district court concluded that, even if Wilson were able to establish a prima facie case, the arbitrator's decision in this matter established Stroh's legitimate, non-discriminatory motive for terminating Wilson. Finally, it concluded that Wilson had failed to show that this non-discriminatory motive was a pretext.II
 
 
 10
 We review a grant of summary judgment de novo. The evidence and all inferences to be drawn therefrom must be construed in a light most favorable to the nonmoving party. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kraus v. Sobel Corrugated Containers, 915 F.2d 227, 229 (6th Cir.1990).
 
 
 11
 In a Title VII employment discrimination case, the plaintiff bears the initial burden of submitting evidence to support a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). The plaintiff must produce "evidence sufficiently strong to raise an inference that [the employer's conduct was] racially motivated." McKenzie v. Sawyer, 684 F.2d 62, 71 (D.C.Cir.1982); see also Hatton v. Ford Motor Co., 508 F.Supp. 620, 623 (E.D.Mich.1981). "Proof of discriminatory motive is critical" when disparate treatment is claimed. International Bhd. of Teamsters v. United States, 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977).
 
 
 12
 Once the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for his action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the defendant is successful, the plaintiff still may prevail if he establishes that the apparently non-discriminatory rationale was merely a pretext. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. A plaintiff may show pretext by establishing that he did not violate the work rule for which he was disciplined or that other employees who engaged in similar misconduct received less severe sanctions.
 
 
 13
 The district court held that Wilson failed to submit evidence supporting a prima facie case of employment discrimination because he failed to show the necessary nexus between DeJaeghere's racial animus, which we presume, and Roselli's decision to terminate his employment. The district court also dismissed Wilson's claim under Michigan's Elliot-Larsen Civil Rights Act for failure to establish a prima facie case.
 
 
 14
 Wilson offers several theories to support his attempt to establish a prima facie case. He first states that DeJaeghere's racial animus should be imputed to Holloway and Roselli. He argues that DeJaeghere's animus somehow infected the decision made by Roselli, based on Holloway's recommendation. He cites several cases as standing for the proposition that a supervisor's discriminatory animus regarding an employee may be imputed to the managers who discharge the employee, even though the managers lack discriminatory intent. See Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir.1990); Perez v. Curcio, 841 F.2d 255 (9th Cir.1988); Crader v. Concordia College, 724 F.Supp. 558, 564 (N.D.Ill.1989); Montgomery v. Campbell Soup, 647 F.Supp. 1372 (N.D.Ill.1986). Wilson then conclusorily asserts that Holloway and Roselli relied on a false record, created by DeJaeghere, to fire him.
 
 
 15
 Stroh's responds by citing several cases as standing for the proposition that the discriminatory comments or desires of intermediate-level supervisors do not, of themselves, establish a prima facie case when the decision to terminate is made by an upper-level official. See McDonald v. Union Camp, 898 F.2d 1155 (6th Cir.1990); Williams v. Williams Electronics, 856 F.2d 920, 925 (7th Cir.1988); Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir.1987); La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405 (7th Cir.1984).[4] Stroh's also notes that Roselli relied upon Holloway's independent investigation and recommendation.
 
 
 16
 Wilson would frame this issue as a question of law: whether the discriminatory motives of a supervisor can, as a matter of law, be imputed to an upper-level manager who makes the decision to terminate the employee. This characterization is somewhat misleading. The determinative question is whether Wilson has submitted evidence that DeJaeghere's racial animus was a cause of the termination. When the question is so framed, it becomes clear that Wilson has failed to submit evidence supporting a prima facie case.
 
 
 17
 Wilson alleges that DeJaeghere, the plant manager, was out to get him and was motivated by racial animus. He also alleges, however, that he was fired by Roselli, the general manager, upon the recommendation of Holloway, the industrial relations manager. Stroh's, in response, established that Holloway's recommendation and Roselli's decision were based on Holloway's independent investigation. Wilson failed to submit evidence that DeJaeghere's discriminatory motives somehow influenced Holloway or Roselli.
 
 
 18
 Wilson also asserts that DeJaeghere brought to Roselli's attention the facts that formed the basis for his discharge. He does not, however, dispute that Holloway conducted an independent investigation of the events. Furthermore, Wilson does not dispute that Roselli discharged him based on Holloway's advice. The fact that DeJaeghere brought Wilson's misconduct to Roselli's attention, without more, is insufficient to support a prima facie case. If Wilson were to offer evidence that DeJaeghere had not reported such misconduct from white employees, then he would establish a prima facie case.
 
 
 19
 Wilson next cites a recent opinion of this court as supportive of his position. See Simpson v. Diversitech General, Inc., 945 F.2d 156 (6th Cir.1991). Both Simpson and Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), upon which Simpson relied, are distinguishable from Wilson's case. Both of those cases were "mixed motives" cases. In Simpson, we explicitly noted that "Ruckman [the racially motivated supervisor] disciplined Simpson in February because of his race and that the February 1987 incident led substantially to Simpson's dismissal." Simpson, 945 F.2d at 160. Similarly, in Price Waterhouse, the Supreme Court noted "that Price Waterhouse in no way disclaimed reliance on the sex-linked evaluations." Price Waterhouse, 490 U.S. at 251, 109 S.Ct. at 1791. In contrast, Wilson offers no evidence that Holloway's recommendation or Roselli's decision was affected by DeJaeghere's racial animus.
 
 
 20
 Price Waterhouse offers some illumination in this case. The Supreme Court stated, "[i]n saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman." Id. at 250, 109 S.Ct. at 1790. In Wilson's case, there is no evidence that any of Roselli's reasons for discharging Wilson related to race. During his deposition, Wilson was unable to offer any evidence that either Holloway or Roselli was in any way racially motivated. This is not a "mixed motives" case.
 
 
 21
 Wilson was discharged by Roselli based on Holloway's recommendation. Holloway had conducted an independent investigation of Wilson's conduct. There is absolutely no support in the record for Wilson's contention that Holloway and Roselli relied on a false record created by DeJaeghere to discharge him. The causal nexus necessary to support Wilson's prima facie case is absent.
 
 III
 
 22
 Wilson also failed to establish a prima facie case under Michigan's Elliot-Larsen Civil Rights Act. See M.C.L. §§ 37.2101 et seq. In order to establish a prima facie case under the Act, Wilson must demonstrate that 1) he is a member of a protected class, 2) he was discharged, 3) the individual that discharged him was predisposed to discriminate against members of the protected class, and 4) the individual acted on this predisposition. See Brewster v. Martin Marietta Aluminum Sales, 145 Mich.App. 641, 378 N.W.2d 558, 563 (1985). There is no evidence that Roselli either suffered from a predisposition or acted upon anyone else's predisposition to discriminate against Wilson. His decision to discharge Wilson was based on Holloway's independent investigation and advice.
 
 IV
 
 23
 Because we conclude that Wilson failed to submit evidence to support a prima facie case under either Title VII of the Civil Rights Act of 1964 or Michigan's Elliot-Larsen Civil Rights Act, we find it unnecessary to reach any of the other issues decided by the district court. For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Stroh's.
 
 
 
 [1]
 Wilson claims that he would not accept DeJaeghere's calls at home because of DeJaeghere's past displays of racial animosity
 
 
 [2]
 When Wilson called Rauen, Rauen's wife told him that Rauen was asleep
 
 
 [3]
 Because the district court granted Stroh's motion for summary judgment, we must assume, as did the district court, that DeJaeghere comported himself in the manner that Wilson asserts
 
 
 [4]
 Additionally, Stroh's argues that collateral estoppel precludes the district court and this court from redetermining any facts found by the arbitrator. Because the district court did not rely upon such a theory to grant Stroh's motion, and because we affirm the decision of the district court, we do not discuss the collateral estoppel theory