25 F.3d 1052
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Kenneth N. WEXLEY, Plaintiff-Appellant,
v.
MICHIGAN STATE UNIVERSITY; Richard Lewis; David Scott;
John Dibiaggio; Delores Cook; and Dean Pridgeon,
Defendants-Appellees.
 No. 93-1718.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Kenneth N. Wexley appeals the district court's summary judgment disposition of his religious discrimination claims. We affirm the district court's April 19, 1993 determinations for the following reasons.
 
 I.
 
 2
 Plaintiff-appellant Kenneth N. Wexley, a Jewish professor, was a tenured faculty member at Michigan State University's College of Business. Defendant-appellee Richard Lewis was the Dean of the College of Business, defendant-appellee David Scott was the University's Provost and Vice-President of Academic Affairs, defendant-appellee John DiBiaggio was the President of the University, and defendants-appellees Delores Cook and Dean Pridgeon were members of the University's Board of Trustees.
 
 
 3
 On October 16, 1990, Dean Lewis recommended to Provost Scott that formal sexual harassment proceedings be initiated against Professor Wexley after four female students complained of his sexual advances. On October 22, 1990, Provost Scott notified President DiBiaggio of Dean Lewis' intent to initiate the dismissal proceedings before the University's Committee on Faculty Tenure ("UCFT") in accordance with the University's Dismissal of Tenured Faculty for Cause Policy ("Dismissal Policy") which provides that tenured faculty may be dismissed for "gross misconduct."
 
 
 4
 On October 24, 1990, Provost Scott charged Professor Wexley with gross misconduct. On November 28, 1990, Professor Wexley and the Provost's designee met with the UCFT to select the Hearing Committee that would hear the evidence. Seven of the UCFT's fifteen faculty members were randomly selected by the UCFT's chairperson to serve on the committee. The Provost's designee used his sole peremptory challenge to dismiss the only Jewish member selected to sit on the Hearing Committee, Professor Martin Fox. The Provost claims that he dismissed Professor Fox due to his previously-shown unwillingness to recommend that tenured faculty be terminated; Professor Wexley insists that the Provost dismissed Professor Fox because he is Jewish.
 
 
 5
 On September 11, 1991, the Hearing Committee issued its decision in which five of the six members found Professor Wexley guilty of gross misconduct and recommended that he be dismissed from the University.[1] Specifically, the Hearing Committee found:
 
 
 6
 (1) [a] persistent pattern of intrusion into students' private affairs through the sexualization of conversations;
 
 
 7
 (2) [a] denial of a student's right to pursue an education and work with faculty in an atmosphere of intellectual and academic freedom; and
 
 
 8
 (3) [an] unreasonable use of his authority to take advantage of others in subordinate positions through sexual advances....
 
 
 9
 Hearing Committee's Preliminary Written Report and Decision at 11.
 
 
 10
 After considering "a wide range of penalties, including a warning letter, job transfer, last chance warning, counseling, removal of merit pay, suspension, suspension with conditions, and dismissal," id., the Hearing Committee recommended, by a five-to-one vote, that Professor Wexley be dismissed. Though the UCFT agreed, on appeal, with the Hearing Committee's finding of gross misconduct, the UCFT asked the Hearing Committee to reconsider its recommendation that Professor Wexley be discharged. Upon reconsideration, the Hearing Committee voted, once again, to dismiss Professor Wexley.
 
 
 11
 On May 14, 1992, President DiBiaggio recommended to the University's Board of Trustees that Professor Wexley be suspended, without pay, for 18 months, and that he be required to submit to psychological counseling. On June 12, 1992, the University's Board of Trustees unanimously adopted President DiBiaggio's recommendations. Professor Wexley refused to accept the terms of the proposed suspension and submitted his resignation to President DiBiaggio on June 26, 1992. The University accepted the professor's resignation on July 23, 1992.
 
 
 12
 Professor Wexley initiated this action claiming, inter alia, that he was discriminated against because he is Jewish. Specifically, Professor Wexley claims that he was dismissed: in violation of Michigan's Elliott-Larsen Civil Rights Act (Count I); in violation of his equal protection and due process rights under 42 U.S.C. Sec. 1983 (Counts II and V); in violation of Michigan's Bullard-Plawecki Employee Right to Know Act (Count III); and, in violation of Michigan's "constructive discharge" laws (Count IV).[2]
 
 
 13
 On June 2, 1992, the district court dismissed Professor Wexley's due process and equal protection claims with prejudice. On April 19, 1993, the district court granted the appellees' motion for summary judgment, dismissed Professor Wexley's civil rights claims, and remanded the Bullard-Plawecki and "wrongful constructive discharge" claims to state court. Professor Wexley timely appealed.
 
 II.
 Standard of Review
 
 14
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In its review, this court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 15
 The moving party has the burden of conclusively establishing that no genuine issue of material fact exists. Id. However, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 16
 "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. 60 Ivy St. Corp., 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).
 
 Professor Wexley's Discrimination Claims
 
 17
 A plaintiff presents a prima facie case of discrimination by showing that he belongs to a protected class, that he was qualified for the position that he held, that he was discharged from his employment, and that he was replaced by a non-minority worker.[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See generally Boutros v. Canton Regional Transit Auth., 997 F.2d 198, 202 (6th Cir.1993) ("This Circuit has held that the required elements of prima facie proof necessary for a plaintiff charging a ... hostile work environment under both Title VII and 42 U.S.C. Sec. 1983 are the same.") Moreover, " '[p]roof of discriminatory motive is critical' when disparate treatment is claimed." Wilson v. Stroh Companies, Inc., 952 F.2d 942, 945 (6th Cir.1992) (citation omitted).
 
 
 18
 When a plaintiff presents a prima facie case of religious discrimination under 42 U.S.C. Sec. 1983, the burden shifts to the employer to articulate non-discriminatory reasons for its actions. See Id. ("Once the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for his action."). "If the defendant is successful, the plaintiff still may prevail if he establishes that the apparently non-discriminatory rationale was merely a pretext." Id. (citation omitted). "A plaintiff may show pretext by establishing that he did not violate the work rule for which he was disciplined or that other employees who engaged in similar misconduct received less severe sanctions." Id.
 
 
 19
 Professor Wexley was constructively discharged in accordance with the Hearing Committee's finding of "gross misconduct" which the University defines as "violations of professional ethics, to wit: the use of professional authority to exploit others, e.g., sexual advances to a student." Though Professor Wexley maintains that the appellees recommended his dismissal because he is Jewish, the professor failed to establish that the appellees treated similarly-situated non-Jewish faculty members more favorably. Accordingly, we need not determine whether Professor Wexley established a prima facie case of employment discrimination under 42 U.S.C. Sec. 1983 because the appellees articulated non-discriminatory non-pretextual reasons for their actions, and Professor Wexley failed to establish pretext. Therefore, the district court properly rejected Professor Wexley's 42 U.S.C. Sec. 1983 claim.
 
 
 20
 In order to establish a prima facie case under Michigan's Elliott-Larsen Civil Rights Act, Professor Wexley "must demonstrate that 1) he is a member of a protected class, 2) he was discharged, 3) the individual that discharged him was predisposed to discriminate against members of the protected class, and 4) the individual acted on this predisposition." Wilson, 952 F.2d at 946 (citation omitted). Once again, we need not determine whether Professor Wexley established a prima facie case under Elliott-Larsen because the appellees (pursuant to the burden-shifting framework) articulated legitimate, non-discriminatory reasons for filing the "gross misconduct" charges and for pursuing the claims, and Professor Wexley failed to establish that the appellees' proffered reasons were pretextual.[4] Accordingly, the district court properly rejected Professor Wexley's Elliott-Larsen claim.[5]
 
 III.
 
 21
 We AFFIRM the district court's April 19, 1993 determinations for the aforementioned reasons.[6]
 
 
 
 [1]
 Though there were seven members on the Hearing Committee initially, one member requested that he be excused after the hearing began
 
 
 [2]
 Professor Wexley's Second Amended Complaint lists the following defendants: Michigan State University; Richard Lewis; David Scott; John DiBiaggio; Delores Cook; and, Dean Pridgeon
 
 
 [3]
 "[T]he final element of the prima facie case [may] be satisfied by proof that plaintiff was replaced by a non-minority worker, or, if plaintiff was not replaced, by proof that non-minority workers with comparable work records were retained while plaintiff was terminated." Williams v. Ford Motor Co., 870 F.2d 658 (6th Cir. Mar. 13, 1989) (unpublished)
 
 
 [4]
 Though Professor Wexley claims that two of the students who accused him of making sexual advances made anti-Semitic remarks, the professor failed to establish a causal nexus between the students' alleged remarks and the University's actions
 
 
 [5]
 Though Professor Wexley claims that the district court lacked the authority to dismiss the Elliott-Larsen claim, " 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.' " Baer v. R & F Coal Co., 782 F.2d 600, 603 (6th Cir.1986) (citation omitted). See Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir.1991) ("[T]rial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed."). Judicial economy and fairness favored the district court's retention of jurisdiction in this action. See Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010 (6th Cir.1987) ("[T]here is sufficient connection between [section] 1983 and Elliott-Larsen claims to justify the exercise of pendent jurisdiction."). Because the substantive elements of proof underlying Professor Wexley's discrimination claims are the same, the district court did not abuse its discretion by exercising its pendent jurisdiction over Professor Wexley's Elliott-Larsen claim
 
 
 [6]
 Though the individual appellees also claim that they are shielded from liability by qualified immunity, the district court did not address the issue, and our substantive determinations above obviate the need to resolve the issue