Peggy CROSS, Plaintiff,

v.

CCL CUSTOM MANUFACTURING,
INC., Defendant.

No. 95–2568–D/BRE.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 13, 1997.

Dan M. Norwood, James R. Becker, Jr., Norwood and Deboo, Memphis, for plaintiff.

Michael V. Tichenor, Joseph M. Crout, Bowling Bowling Parker & Laughlin, Memphis, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is the motion of defendant, CCL Custom Manufacturing, Inc. (CCL), for summary judgment. Underlying is a suit brought by the plaintiff, Peggy Cross (Plaintiff), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–1, *et seq.* (Title VII). Plaintiff alleges that supervisors at CCL gave preferable treatment to similarly situated employees from outside of Plaintiff's protected classification.

Title VII prohibits discrimination "... against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Disparate treatment occurs when the employer treats the aggrieved employee less favorably than the employer treats other employees, simply because of the aggrieved employee's race, color, religion, sex, or national origin. *Franklin v. ITT Weaver,* 626 F.Supp. 177 (E.D.Mo.1985). To make out a claim under Title VII, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Wilson v. Stroh Companies, Inc.,* 952 F.2d 942, 945 (6th Cir. 1992) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established a four-part, inferential test of a *prima facie* case, wherein the plaintiff must prove:

(1) that the plaintiff is a member of a protected group;

(2) that the plaintiff was subject to an adverse employment action;

(3) that the plaintiff was qualified for the position sought or held; and,

(4) that the plaintiff was replaced by a person outside the protected class.

*Id.* at 802, 93 S.Ct. at 1824; *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977) (if the plaintiff offers no direct evidence of unlawful discriminatory intent, the *McDonnell Douglas* test applies); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995) (the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796 (6th Cir.1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992).

A plaintiff may establish a *prima facie* case through circumstantial evidence "... by showing that an employer took action adversely affecting the plaintiff's compensation, terms, conditions, or privileges of employment under circumstances giving rise to an inference of unlawful discrimination." *Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 279 (6th Cir.), *cert. denied,* 503 U.S. 945, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1991); *Talley,* 61 F.3d at 1246. Alternatively, a plaintiff may establish a *prima facie* case of discrimination by presenting direct evidence of intentional discrimination by the defendant. *Talley,* 61 F.3d at 1246 (citing *Terbovitz v. Fiscal Court,* 825 F.2d 111, 114–15 (6th Cir. 1987)); *see International Bhd. of Teamsters,* 431 U.S. 324, 97 S.Ct. 1843.

Establishing disparate treatment between members of two classes or races is a legitimate way of establishing a *prima facie* case of discrimination under 42 U.S.C. § 2000e–2(a)(1). *Leftwich v. United States Steel Corp.,* 470 F.Supp. 758 (W.D.Pa.1979). However, "[d]ifferent treatment does not constitute disparate treatment absent evidence of a disparate comparison to a similarly situated coworker or evidence supporting an allegation of illegitimate reasons for the employer's actions." *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 69 (6th Cir.1985). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are "nearly identical" to those of the non-minority employees who he alleges were treated more favorably. *Pierce,* 40 F.3d 796, 802; *Payne v. Illinois Cent. Gulf R.R.,* 665 F.Supp. 1308, 1333 (W.D.Tenn. 1987).

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer who must articulate a legitimate, nondiscriminatory reason for the adverse treatment. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. "A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." *Galbraith,* 944 F.2d at 282. The defendant's burden is one of production only. *Id.* at 282–83 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094).

If the defendant meets this burden, the plaintiff may then attempt to prove that the defendant's proffered reason for the employment decision is merely pretext. *Galbraith,* 944 F.2d at 279. A plaintiff may show pretext by demonstrating, by a preponderance of the evidence, either (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the employer's action, or (3) that the proffered reason was insufficient to motivate the employer's action. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). The plaintiff, however, is not required to produce direct evidence of discrimination to rebut the employer's proffer of a legitimate, nondiscriminatory reason. *Galbraith,* 944 F.2d at 283. The trier of fact may ultimately look at the totality of the evidence to determine whether the defendant's decision was motivated by intentional discrimination. *Id.*

Even if the plaintiff proves that the employer's proffered reason is pretext, the plaintiff still bears the ultimate burden of proving that a discriminatory intent motivated the defendant's actions. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Throughout the case, the plaintiff's burden is one of both production and persuasion. *Galbraith,* 944 F.2d at 283.

A tripartite analysis for disparate treatment, as developed by the Court in *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25, which summarizes most of the above discussion, was distilled in *Shah v. General Elec. Co.,* as follows:

(1) the plaintiff must prove a *prima facie* case;

(2) the defendant must offer a legitimate, nondiscriminatory reason for its action; and,

(3) the plaintiff must establish that the defendant's proffered explanation is a pretext to mask an illegal motive.

816 F.2d 264, 267 (6th Cir.1987). The plaintiff's ultimate burden in a disparate treatment case under Title VII is to persuade the court that he has been the victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment may be discharged by pointing out that there is an "absence of evidence to support the nonmoving party's case." *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The Court may also consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PRO-CEDURE § 2721, at 40, § 2722, at 56 (2d ed. 1983).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

CCL is a contract packager of personal care and fragrance products for the consumer market. CCL operates under a collective bargaining agreement (CBA) with Warehouseman's Local Union No. 984 (Union), an affiliate of the International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers of America (Teamsters).

Plaintiff is an African–American female. She began working at CCL in 1976. At the time of her discharge in 1994, Plaintiff was the Union's Chief Steward at CCL. On or about June 2, 1994, CCL suspended Plaintiff and co-worker, Carolyn Woods. CCL terminated Plaintiff and Woods on June 10, 1994. Plaintiff filed a grievance on June 8, 1994, which was denied on or about June 16, 1994. Plaintiff filed a claim with the Tennessee Department of Employment Security

(TDES) on June 15, 1994, for unemployment benefits. TDES rejected Plaintiff's claim pursuant to Tenn.Code Ann. § 50–7–303(a)(2). On June 27, 1994, Plaintiff appealed the determination, and a hearing on her appeal was held on July 26, 1994. The Appeals Tribunal affirmed the denial of benefits pursuant to Tenn.Code Ann. § 50–7–303(a)(2). Arbitration with the Union followed, and the parties were heard by an arbitrator on August 11, 1994. On August 29, 1994, the arbitrator found against Plaintiff. .

Plaintiff was working as an assembler on assembly line number 17 at the time of her suspension and discharge. On line 17, assemblers were assembling bottles of hair spray. The duty of the assembler was to place the pump in the full bottle of hair spray. Open bottles of hair spray would move down the line on a conveyor belt. Originally, pumps were in boxes beside the assemblers, who were allowed to sit in chairs. The method was changed, however, to stage the pumps in hoppers across the conveyor belt and to require assemblers on line 17 to stand.

As Plaintiff and Woods began their shifts on line 17 on June 2, 1994, they brought chairs to the line, sat down, and started to assemble hair spray bottles. From the record, it is not clear that the standing requirement was made known to the employees prior to the shift. It is uncontested that Doris Pierce, Plaintiff's group leader, approached Plaintiff and asked whether she knew that assemblers were required to stand on the line. Plaintiff responded that she was unaware of the change and remained seated. It is uncontested that Paul Maners (Production Supervisor) came to Plaintiff's position and indicated that assemblers were required to stand on the line. When Plaintiff still remained seated, Maners led her into an office, where ensued a meeting attended by Plaintiff, Maners, Darral Simmons (Plant Manager), Alice Pennington (Human Resources Manager), and Ron Bomar (Union Business Agent). At this meeting, Plaintiff iterated that she was not refusing to stand on the line, but that she, in her capacity as Chief Steward, questioned the change. Simmons suspended and subsequently discharged Plaintiff.

■ The grounds proffered by CCL for Plaintiff's discharge were that she violated work rule 27 (gross insubordination) of the posted company policy by refusing the direct order of superior. According to company policy, the infraction of work rule 27 is punishable by discharge on the first offense. Plaintiff's claim of disparate treatment is predicated upon her assertion that similarly situated employees from outside of her protected classification committed similar, if not more egregious, violations of company policy but were not discharged. Plaintiff has proffered three comparables to support her allegation of disparate treatment:

1. Kirk Harbin;
2. Tom Richards; and,
3. Elaina Martinez.

■ For the purposes of this summary determination, the Court finds that neither Kirk Harbin and Tom Richards was similarly situated to this Plaintiff. Harbin and Richards were skilled mechanics, while Plaintiff was an unskilled assembler. *See Pierce,* 40 F.3d at 802 (necessary to show employment situation of "comparable" is "nearly identical"). Martinez was an assembler who refused to obey the direct command of her supervisor. Simmons reviewed Martinez' alleged gross insubordination, but decided not to terminate her.

■ CCL asserts that a comparison between Plaintiff and Martinez must fail because Martinez, who is Hispanic, is a minority and that Plaintiff cannot make out a *prima facie* case of disparate treatment by showing that another minority was treated more favorably than Plaintiff. Memorandum In Support of Defendant's Motion For Summary Judgment, page 17. The Court finds CCL's argument specious, at best. Whether it be in favor of a non-minority or another minority, intentional discrimination on the basis of race is violative of Title VII. *Cf. McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823 (purpose of Title VII is to assure equality of employment opportunity and to eliminate those discriminatory practices which have fostered racially stratified

job environments to the disadvantage of minority citizens); *Leftwich,* 470 F.Supp. 758 (establishing disparate treatment between members of two classes or races is a legitimate way of establishing a *prima facie* case of discrimination). That Martinez was Hispanic is of no relevance apart from setting her squarely outside of Plaintiff's protected racial classification. Title VII essays to protect workers from unequal treatment because of individuals' racial or other impermissible classifications. *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823 (citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1971)).

*McDonnell Douglas* is especially apposite to this case *sub judice.* In *McDonnell Douglas,* the Supreme Court was presented with a factual scenario involving a company's refusal to retain or rehire an African–American plaintiff who had admittedly violated company policy, but to retain or rehire similarly situated caucasian employees who had engaged in similarly violative conduct. The Court said that the employer "may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members **of all races.**" *Id.* at 804, 93 S.Ct. at 1825 (emphasis supplied). The Supreme Court said "of all races", not "of the caucasian race". *Id.* Martinez' classification as Hispanic does not serve to invalidate comparison with Plaintiff. *Id.*

For purposes of this motion, Plaintiff has demonstrated her *prima facie* case. The inference of intentional unlawful discrimination arises under *McDonnell Douglas.* The burden of production shifts to the defendant, to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 802, 93 S.Ct. at 1824. Here, CCL posits again that Plaintiff was guilty of gross insubordination. The Court, however, finds CCL's burden unmet or sufficiently rebutted by Plaintiff's claim of pretext and denies summary judgment. A genuine issue of material fact exists, to-wit, did Elaina Martinez receive preferential treatment on the basis of her noninclusion in Plaintiff's protected classification? By failing to demonstrate to the Court that Martinez did not receive preferential treatment on racial grounds, CCL has failed to show entitlement to judgment as a matter of law. The defendant's motion for summary judgment is therefore **DENIED.**